# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**DAVID RAGSDALE**                                                                               **PLAINTIFF**

**V.**                              **CASE NO.: 3:14CV00076 BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff David Leo Ragsdale has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

Mr. Ragsdale alleged that he became limited in his ability to work by high blood pressure, obesity, back problems, knee problems, asthma, migraines, bipolar disorder, and depression. (SSA record at 66) After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Mr. Ragsdale had not been under a disability within the meaning of the Social Security Act at any time through July 10, 2012, the date of his decision. (*Id*. at 24) On February 4, 2014, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1-5) Mr. Ragsdale then filed his complaint initiating this appeal. (Docket #2)

Mr. Ragsdale was 21 years old at the time of the ALJ's decision and lived with his mother and grandmother. (SSA record at 38-39) He had a ninth grade education and no past relevant work. (*Id*.) At the hearing, he was 5'11" tall and weighed approximately 380 pounds. (*Id*. at 38-39)

The ALJ found that Mr. Ragsdale had not engaged in substantial gainful activity since November 5, 2010, his amended onset date. (*Id*. at 17, 38) He found that Mr. Ragsdale had "severe" impairments: obesity, bipolar disorder, posttraumatic stress disorder, and conduct disorder. (*Id*.) He further found that Mr. Ragsdale did not have an impairment or combination of impairments that met or equaled a listed impairment

---

[2]The Honorable Clarence Daniel Stripling.

(Listing). (*Id*. at 17) He judged that Mr. Ragsdale's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not totally credible. (*Id*. at 18-19)

Based on these findings, the ALJ concluded that Mr. Ragsdale retained the residual functional capacity for light work, but could only occasionally climb ladders, ropes, scaffolds, ramps, and could only occasionally kneel, crawl, balance, stoop, and crouch. Further, Mr. Ragsdale would be limited to work with simple, routine, repetitive tasks with only brief, superficial interaction with coworkers or the public. (*Id*. at 18)

The ALJ found that Mr. Ragsdale had no past relevant work. (*Id*. at 22) Based on testimony from a vocational expert (VE), however, the ALJ concluded Mr. Ragsdale could perform jobs that existed in significant numbers in the national economy.[3] (*Id*. at 23) Thus, the ALJ concluded Mr. Ragsdale was not disabled. (*Id*. at 23-24)

**Hypothetical**

In his appeal of the ALJ's decision, Mr. Ragsdale argues the ALJ erred by failing to include his morbid obesity in the hypothetical he posed to the VE. Relying on *Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998), Mr. Ragsdale maintains that the ALJ's hypothetical was not sufficient because it described general exertional limitations but did not describe the nature and extent of Mr. Ragsdale's obesity (*i.e*. his height and weight). (#14 at p. 14)

---

[3]The VE identified two jobs that a person with Mr. Ragsdale's limitations could perform – housekeeper, fast food worker, and price marker. (*Id*. at 23)

*Morrison* does not apply to this case for a number of reasons. First, *Morrison* was decided before obesity was deleted as a separate Listing and before SSR 02-01p, which provides guidance on SSA policy concerning the evaluation of obesity in disability claims, was issued. Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 67 FR 57859-02 (Listing 9.09, Obesity, was deleted from the Listing of Impairments in 20 CFR, subpart P, appendix 1 effective on October 25, 1999). Here, the ALJ found Mr. Ragsdale's obesity to be a severe impairment and included in his hypothetical to the VE all of Mr. Ragsdale's limitations that were supported by substantial evidence.

Additionally, the medical facts relating to the effects of Mr. Ragsdale's obesity are distinguishable from the facts in *Morrison*. The claimant in *Morrison* had been diagnosed with progressive degenerative arthritis which had caused multiple joint problems. He had undergone several arthroscopic surgeries for knee problems related to his arthritis; had side-effects from medication that included blurred vision; and had been extensively examined by a doctor with the Department of Veterans Affairs who concluded he was totally disabled. *Morrison*, 146 F.3d at 627.

In contrast, a consulting examination of Mr. Ragsdale by Joseph Patterson, M.D., revealed no muscle atrophy from inactivity or sensory abnormalities; normal gait; and only a small decrease in his range of motion in the knees. (SSA record at 625-26) Mr. Ragsdale was able to hold a pen and write, pick up a coin, walk without assistive devices,

walk on heels and toes, and squat and arise from a squatting position. (*Id*. at 626) Dr. Patterson found that Mr. Ragsdale had only mild limitation in his ability to kneel and stoop. (*Id*. at 627)

In *Robson v. Astrue*, 526 F.3d 389 (8th Cir. 2008), the Court found no error in the ALJ's excluding the plaintiff's obesity from the hypothetical posed to the VE. *Robson*, 526 F.3d at 392 (citing *Thompson v. Astrue*, 226 Fed.Appx. 617, 620 (8th Cir. 2007). In *Robson*, the plaintiff claimed that her obesity exacerbated her existing medical infirmities, but she did not explain how including obesity in the question posed to the VE would have made a difference in the outcome. *Id*. at 393. Similarly, here Mr. Ragsdale has not explained how including obesity in the hypothetical would have changed the limitations included in the hypothetical. The ALJ did not err in posing a hypothetical that adequately described all of the physical limitations supported by substantial evidence because the limitations included those caused by Mr. Ragsdale's obesity.

**Residual Functional Capacity**

Mr. Ragsdale also argues that the ALJ erred in his residual functional capacity ("RFC") assessment because his mental impairments prevented him from performing unskilled work. (#14 at pp. 14-16) The ALJ must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

As support for his argument, Mr. Ragsdale points to his hospitalization at age 12 and his Global Assessment of Functioning (GAF) scores at and below 50 from 2006 and 2008, prior to his November, 2010 amended onset date. (#14 at p. 15) A GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning. *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) (DSM–IV) at p.32. The DSM–IV, a classification of mental disorders, was developed for use in clinical, educational, and research settings. Specific diagnostic criteria included in the DSM–IV are meant to serve as guidelines to augment clinical judgment and are not meant to be used in a cookbook fashion. And under applicable social security regulations, GAF scores do not have a direct correlation to the severity requirements in mental disorders listings. 65 Fed.Reg. 50746, 50764–65 (2000).

Moreover, the GAF scores Mr. Ragsdale points to are from 2006 and 2008 – three or more years prior to his alleged onset date. The ALJ considered the entire record, including the GAF scores, when assessing Mr. Ragsdale's RFC, and he did not err by giving greater weight to the medical evidence for the relevant time period. See *Jones v. Astrue*, 619 F.3d 963, 972-74 (8th Cir. 2010) (ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it).

In assessing Mr. Ragsdale's RFC, the ALJ discussed the medical evidence from the relevant time period, Mr. Ragsdale's subjective complaints, as well as other evidence. (*Id*. at 18-22) He considered Mr. Ragsdale's mental functioning in activities of daily

living; social functioning; concentration persistence, and pace; and episodes of decompensation. (*Id*. at 20-21) As the ALJ noted, although Mr. Ragsdale testified to having panic attacks and depression, he was not taking medications and had not received mental health treatment since 2008 or 2009. (*Id*. 19, 42) From April, 2011, to August, 2011, Mr. Ragsdale was treated conservatively with medication management for depression with anxiety and was doing well. (*Id*. at 20, 693)

The ALJ also discussed the Mental Diagnostic Evaluation completed by Samuel Hester, M.D., on March 7, 2011. (*Id*. at 613-22) Dr. Hester noted that Mr. Ragsdale reported hospitalization as a child due to angry outbursts after having been sexually abused, and outpatient treatment as a teenager. He noted, however, that Mr. Ragsdale was not receiving mental health treatment or psychiatric medications at the time of the evaluation.

Dr. Hester stated that Mr. Ragsdale showed no evidence of psychotic symptoms, suicidal ideation, or cognitive impairments during the examination. (*Id*. at 21, 613-14) Mr. Ragsdale complained of anxiety, but Dr. Hester did not have enough data to determine a personality disorder diagnosis. (*Id*. at 613) Dr. Hester did diagnose gender-identity disorder, posttraumatic stress disorder, and borderline and dependent personality traits; and he assigned a GAF score of 55. Dr. Hester concluded that Mr. Ragsdale was able to communicate and interact in a socially adequate manner; was likely to be able to cope with the typical mental demands of basic work-like tasks; had the ability to attend

and sustain concentration on basic tasks; had the ability to sustain persistence in completing tasks; and had the ability to complete work-like tasks within an acceptable time-frame.[4] (*Id*. at 21, 618-19)

The ALJ also considered the opinion of State agency consultant Cheryl Woodson-Johnson, Psy.D., who found that Mr. Ragsdale's condition would not preclude his ability to complete simple routine tasks in a low stress environment with minimal contact with others. (*Id*. at 22, 641) Sheri L. Simon, Ph.D., agreed. (*Id*. 686)

Finally, the ALJ also considered Mr. Ragsdale's testimony that he could help his mother feed their dogs, move water hoses and perform light work on a farm from 8:00 a.m. to 5:00 p.m. (*Id*. 40-41) The ALJ also noted that Mr. Ragsdale reported being able to occasionally do laundry, prepare small meals, dress himself, feed himself, watch television, go to the store, and count change. (*Id*. at 19, 40-41, 135-37)

The ALJ recognized that Mr. Ragsdale's impairments created limitations, and he incorporated appropriate limitations into his residual functional capacity finding. (*Id*. at 18-22)

---

[4]Similarly, Suzanne Gibbard, Ph.D. found in her mental status, intellectual assessment, and evaluation of adaptive functioning completed December 31, 2008, that Mr. Ragsdale had the ability to sustain and concentrate and the capacity to cope with mental cognitive work demands. (*Id*. at 296)

8

**Credibility**

Mr. Ragsdale complains that the ALJ erred in assessing his credibility because he only relied on an inconsistency with the medical evidence and his activities of daily living. (#14 at p. 17) To evaluate Mr. Ragsdale's credibility, the ALJ followed the required two-step process and considered the required factors, including Mr. Ragsdale's activities of daily living.[5] SSA record at pp. 18-22; see *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996). Thus, the question before the court is whether substantial evidence supports the ALJ's evaluation of Mr. Ragsdale's credibility.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole."). Here, the ALJ determined that the medical findings were inconsistent with disabling pain. SSA record at 18-21. Substantial evidence supports that determination.

---

[5] In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

As the ALJ noted, the medical record does not support Mr. Ragsdale's complaints of disabling pain. Dr. Patterson performed a consulting examination of Mr. Ragsdale and found that Mr. Ragsdale had no muscle atrophy from inactivity or sensory abnormalities; normal gait; and only a small decrease in his range of motion in his knees. (SSA record at 625-26) Dr. Patterson concluded that Mr. Ragsdale had only mild limitation in his ability to kneel and stoop. (*Id*. at 627) State agency physicians who reviewed the medical record concluded that Mr. Ragsdale could perform light work with occasional postural limitations. (*Id*. at 628-37, 687-91)

Further, in assessing Mr. Ragsdale's credibility, the ALJ considered not only the medical record and activities of daily living, but also Mr. Ragsdale's failure to seek treatment for his allegedly disabling mental impairment, his sporadic use of medications, and records suggesting medications helped alleviate his symptoms. (*Id*. 18-22, 54, 693) These are all factors an ALJ may properly consider when making a credibility determination. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

**Conclusion**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which would support a different outcome. The test is whether there is substantial evidence, on the record as a whole, to support the ALJ's decision. *Van Vickle v. Astrue,* 539 F.3d 825, 828 (8th Cir. 2008).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401. The Commissioner's decision is not based on legal error.

The final determination of the Commissioner is AFFIRMED, and Mr. Ragsdale's complaint is hereby dismissed with prejudice. The oral argument hearing scheduled for January 22, 2015, at 10:00 a.m. is canceled.

IT IS SO ORDERED this 13th day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE